**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| **SCOTTSDALE INDEMNITY COMPANY**, an Ohio corporation, <br>     Plaintiff <br><br> v. <br><br> **INTERNATIONAL RISK PLACEMENT, INC.**, an Illinois corporation, and **LIBERTY CORPORATE CAPITAL LTD.**, incorporated under the laws of England and Wales, <br>     Defendants | **Case Number: 1:23-cv-03063** <br><br> **Judge:** <br><br> **Magistrate Judge:** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Scottsdale Indemnity Company ("Scottsdale"), by and through its legal counsel Peters & Nye LLP, for its Complaint for Declaratory Judgment and Other Relief against International Risk Placement, Inc. ("IRPI") and Liberty Corporate Capital Ltd. ("Liberty") states as follows:

**NATURE OF ACTION**

1. This insurance coverage dispute arises from a lawsuit filed against IRPI by Liberty in the U.S. District Court for the Northern District of Illinois, captioned *Liberty Corporate Capital Ltd. v. International Risk Placement, Inc.*, Case Number 23-cv-2038 (the "Liberty Lawsuit").

2. Scottsdale brings this action for declaratory judgment pursuant to 28 U.S.C. §2201, to obtain a declaration that it has no duty to defend or indemnify IRPI with respect to the Liberty Lawsuit.

## PARTIES

3. Plaintiff Scottsdale is an insurance company organized under the laws of the State of Ohio with its principal place of business in Scottsdale, Arizona.

4. At all relevant times, Scottsdale was authorized to transact and conduct insurance business in the State of Illinois.

5. Defendant IRPI is an Illinois corporation with its principal place of business in Cook County, Illinois.

6. Defendant Liberty is the sole capital provider, or "Name," for Lloyd's Syndicate 4472, an unincorporated foreign syndicate that is duly authorized to underwrite and administer insurance within the Lloyd's, London insurance market. Liberty is incorporated under the laws of England and Wales, and maintains its principal place of business in London, United Kingdom. Liberty is named as a potentially interested party by virtue of its status as the plaintiff in the underlying Liberty Lawsuit.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship and because the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. This Court has the authority to declare the rights and obligations of the parties under the terms and provisions of the Scottsdale policies issued to IRPI pursuant to 28 U.S.C. §2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

9. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) because Defendant IRPI is a resident and citizen of the State of Illinois, and because Liberty, a foreign entity, may be sued in any judicial district pursuant to 28 U.S.C. §1391(c)(3).

10. Venue is also appropriate in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District and the underlying lawsuit upon which this declaratory judgment action is based is pending in this District Court.

## THE SCOTTSDALE POLICIES

11. Scottsdale issued Insurance Agents and Brokers Professional Liability Policy No. ABI-0005032 to IRPI for the October 1, 2021 to October 1, 2022 **Policy Period** (the "2021-2022 Policy"). A true and correct copy of the 2021-2022 Policy (with confidential information redacted) is attached hereto as **Exhibit A**.

12. Scottsdale issued Insurance Agents and Brokers Professional Liability Policy No. ABI-0005456 to IRPI for the October 1, 2022 to October 1, 2023 **Policy Period** (the "2022-2023 Policy"). A true and correct copy of the 2022-2023 Policy (with confidential information redacted) is attached hereto as **Exhibit B**.

13. The 2021-2022 Policy and the 2022-2023 Policy are collectively referred to herein as the "Policies".

14. The Insuring Agreement of the 2021-2022 Policy reads as follows:

> **I.     INSURING AGREEMENT**
>
> **A.     Insurance Agents and Brokers Professional Liability**
>
> The **Company** will pay on behalf of the **Insured** any **Damages** as a result of a **Claim** first made against the **Insured** during the **Policy Period** or DISCOVERY PERIOD, if applicable, for a **Wrongful Act** of the **Insured** or any other person for whom the **Insured** is legally liable, but only if:
>
> **1.**     such **Wrongful Act** is first committed on or after the RETROACTIVE DATE stated in **Item 5.** of the

        Declarations and before the end of the **Policy Period;** and

2. prior to the inception date of the first policy in a series of uninterrupted policies issued to the **Named Insured** by the **Company** of which this Policy is a direct or indirect renewal or replacement, no **Insured** had a reasonable basis to believe that such **Wrongful Act** had been committed or that a **Claim** would be made against any **Insured** alleging such **Wrongful Act.**

    B.    **Defense Costs**

The **Company** has the right and duty to defend any **Claim** to which this insurance applies other than a **Disciplinary Proceeding,** even if the allegations of the **Claim** are groundless, false or fraudulent. … .

(Section I., 2021-2022 Policy, Ex. A).

15.    **Insured** is defined in Section II.F. of the 2021-2022 Policy in pertinent part as follows:

    F.    **Insured** means:

        1.    the **Named Insured;** … .

(Section II.F., 2021-2022 Policy, Ex. A).

16.    **Named Insured** is defined in Section II.H. of the 2021-2022 Policy as follows:

    H.    **Named Insured** means the individual, partnership, corporation or other entity first designated in **Item 1.** of the Declarations (herein called the **First Named Insured**) and any other individual, partnership, corporation or other entity identified in **Item 1.** of the Declarations or by endorsement to this Policy.

(Section II.H., 2021-2022 Policy, Ex. A).

17.    IRPI, the entity designated in **Item 1.** of the Declarations of the 2021-2022 Policy, is the **Insured** under the 2021-2022 Policy. (Declarations, 2021-2022 Policy, Ex. A).

18.    **Claim** is defined in Section II.B. of the 2021-2022 Policy as follows:

4

  **B.** **Claim** means:

    **1.** a written demand for damages or a civil proceeding seeking monetary relief commenced by service of a complaint or similar pleading; or

    **2.** a **Disciplinary Proceeding,** but only with respect to the coverage afforded under **INSURING AGREEMENT I.C.3.**

(Section II.B., 2021-2022 Policy, Ex. A).

  19. **Wrongful act** is defined in Section II.L. of the 2021-2022 Policy as follows:

  **L.** **Wrongful Act** means any actual or alleged negligent act, error or omission, including a **Personal Injury,** committed solely in the performance or failure to perform **Professional Services.**

(Section II.L., 2021-2022 Policy, Ex. A).

  20. **Professional Services** is defined in Section II.K. of the 2021-2022 Policy as follows:

  **K.** **Professional Services** means insurance services performed for others for a fee or a commission, including via electronic means or method, as a property, casualty, surety, life, accident, health or other insurance agent, insurance broker, insurance consultant, general agent, managing general agent, managing general underwriter, program administrator, surplus lines broker or wholesale broker, including any of the following services: notary, premium financing, claims handling or adjusting, risk management or loss control services.

(Section II.K., 2021-2022 Policy, Ex. A).

  21. **Damages** are defined in Section II.C. of the 2021-2022 Policy, as amended by Endorsement No. 3 and Endorsement No. 7, as follows:

  **C.** **Damages** means damages, judgments and settlements negotiated with the **Company's** consent; provided, however, **Damages** shall not include:

    **1.** **Defense Costs;**

5

  **2.** criminal or civil fines or penalties imposed by law directly on any **Insured**, or on anyone for whose actions the **Insured** is legally liable;
  **3.** the multiplied portion of any multiplied damages award;
  **4.** the return, refund, disgorgement, waiver or forgiveness of any fees, commissions or charges; or
  **5.** any matter deemed uninsurable under the law pursuant to which this Policy shall be construed.

 **Damages** shall include punitive or exemplary damages, unless uninsurable under the applicable law most favoring coverage for such damages.

 Notwithstanding the foregoing, punitive damages are not insurable under the laws of Illinois.

(Section II.C., and Endorsement Nos. 3 and 7, 2021-2022 Policy, Ex. A).

 22. **Defense Costs** are defined in Section II.D. of the 2021-2022 Policy as follows:

  **D.** **Defense Costs** means reasonable and necessary fees, costs and expenses incurred by the **Company** or with its approval (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense or appeal of a **Claim** against the **Insured,** but shall not include salaries, wages, overhead or benefit expenses associated with employees of the **Company** or the **Named Insured.**

(Section II.D., 2021-2022 Policy, Ex. A).

 23. Section V.C. of the 2021-2022 Policy addresses a written notice of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and reads as follows:

 If during the **Policy Period** or the DISCOVERY PERIOD (if applicable) the **Insured** first becomes aware of any circumstance which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and gives written notice to the **Company** of the circumstance, the anticipated **Wrongful Act** allegations and the reason for anticipating such a **Claim,** with full particulars as to dates, persons and entities involved, then a **Claim** subsequently made against such **Insured** arising out of such **Wrongful Act** and reported to the **Company** shall be considered made at the time the **Insured** gave such notice of circumstance to the **Company.**

(Section V.C., 2021-2022 Policy, Ex. A).

24. Section III., Exclusion A.5. of the 2021-2022 Policy reads as follows:

> **A.** The Policy will not apply to any **Claim** based on, directly or indirectly arising out of or resulting from:
>
>> **5.** any actual or alleged placement of or failure to place any reinsurance, any actual or alleged sale or failure to sell any securities other than mutual funds, variable annuities or variable life insurance, any actual or alleged performance of or failure to perform any actuarial services, or any actual or alleged commingling of or failure to collect or safeguard any money.

(Section III., Exclusion A.5., 2021-2022 Policy, Ex. A).

25. The terms, conditions, and exclusions of the 2022-2023 Policy are the same as the terms, conditions, and exclusions of the 2021-2022 Policy with the exception of the **Policy Period**. (*See*, Declarations; Section I.; Section II., Paragraphs B, C, D, F, H, L, K; Endorsement Nos. 3 and 7; Section III., Exclusion A.5.; and Section V.C. of the 2022-2023 Policy, Ex. B hereto, which contain the 2021-2022 Policy terms cited at ¶¶14-24 *supra*).

## THE LIBERTY LAWSUIT

26. On August 4, 2022, David Selwood of IRPI, sent an email to Scottsdale giving notice of circumstances that may lead to a claim against IRPI by the Underwriters in London. (The August 4 Notice). A true and correct copy of the August 4 Notice is attached hereto and incorporated herein as **Exhibit C**.

27. The August 4 Notice advised Scottsdale that a claim may arise out of IRPI's issuance of a settlement check made payable to the wrong payee and mailed to the wrong address pursuant to instructions given in fictitious email received by IRPI.

28. The August 4 Notice was submitted under Policy No. ABI-0005032, which is the 2021-2022 Policy in effect for the October 1, 2021 to October 1, 2022 **Policy Period**.

29. On October 7, 2022, Liberty's counsel sent a letter to Nationwide Management Liability & Specialty acting on behalf of Scottsdale, copied to David Selwood of IRPI, which purported to place Scottsdale on notice of a claim by Liberty against IRPI regarding the matters later alleged in Liberty's Complaint. (The "Liberty Letter"). A true and correct copy of the Liberty Letter (with confidential information redacted) is attached hereto and incorporated herein as **Exhibit D**.

30. In a December 12, 2022 letter sent on Scottdale's behalf by its counsel to IRPI, Scottsdale denied coverage and defense for the Liberty Letter under the 2022-2023 Policy. In the December 12, 2022 letter, Scottsdale provided a provisional defense of the Liberty Letter out of an abundance of caution and subject to a full and complete reservation of rights, including the right to file a declaratory judgment action regarding the availability of coverage for the matters addressed in the Liberty Letter.

31. The Liberty Letter was rendered moot and supplanted by the Complaint that Liberty filed against IRPI on March 31, 2023 in the Liberty Lawsuit. (The "Liberty Complaint"). A true and correct copy of the Liberty Complaint is attached hereto and incorporated herein as **Exhibit E**.

32. The Liberty Complaint alleges that Liberty, the Plaintiff therein, is the sole corporate capital provider, or "Name" for Syndicate 4472 at the Underwriters at Lloyd's, London ("Syndicate 4472"). The Liberty Complaint alleges that Defendant, IRPI, a Coverholder for Syndicate 4472, has a Binding Authority Agreement with Syndicate 4472 pursuant to which IRPI administered a claim that was made against Syndicate 4472's insured (referred to in the Liberty Complaint as the "IRPI.GL.18.295 Claim").

33. The Liberty Complaint alleges that Syndicate 4472 agreed to pay a settlement that was reached with respect to the IRPI.GL.18.295 Claim (referred to in the Liberty Complaint as the "IRPI.GL.18.295 Settlement"). The settlement funds were delivered to IRPI by Syndicate 4472's authorized agent on or about May 4, 2022 for payment of the settlement funds to the underlying plaintiff and its counsel in the IRPI.GL.18.295 Claim pursuant to the IRPI.GL.18.295 Settlement.

34. The Liberty Complaint alleges that on May 5, 2022 and May 6, 2022, David Selwood, the president of IRPI, received fictitious emails purportedly sent by an attorney at the office of the counsel defending the IRPI.GL.18.295 Claim, which identified the wrong payee for the settlement check and the wrong address to which the settlement check should be sent. The Liberty Complaint alleges that, pursuant to the fictitious email, on May 6, 2022, Mr. Selwood and IRPI made the settlement check payable to the order of the wrong payee and mailed the settlement check to the wrong address. The Liberty Complaint alleges that Mr. Selwood and IRPI did not stop payment of the settlement check after receiving the correct settlement check payee instructions and correct mailing instructions from the defense counsel on May 16, 2022. The Liberty Complaint alleges that the settlement check was cashed on May 23, 2022. The Liberty Complaint alleges that the plaintiff's attorney in the IRPI GL.18.295 Claim did not receive the settlement check. The Liberty Complaint alleges that IRPI did not recover the settlement funds it lost, and failed and refused to replace the lost settlement funds.

35. The Liberty Complaint alleges that IRPI breached its duties to Syndicate 4472 by failing "to keep the settlement funds safe", failing to "preserve and protect" the settlement funds, "failing to deliver [the settlement funds] as directed", "mishandling" the settlement funds, "misdelivering" the settlement funds, "losing" the settlement funds, and "failing to recover and repay" the settlement funds that Syndicate 4472 "entrusted to IRPI's care". (Liberty Complaint,

9

Ex. D., and *see also*, ¶¶ 1, 69, 70, 71, 72, 60, 58, 76, 74, 63, and Wherefore Clauses of Count I and Count II). The Liberty Complaint alleges that due to IRPI's breach of its obligations, Syndicate 4472 was required to pay the settlement funds twice. Count I of the Liberty Complaint alleges a cause of action for Breach of Contract/Bailment and Count II of the Liberty Complaint alleges a cause of action for negligence. The Liberty Complaint demands recovery of the lost settlement funds and interest thereon, an award of attorneys' fees and costs, and such other relief as deemed appropriate, fair, and just.

36. The Liberty Complaint was submitted to Scottsdale by an April 21, 2023 letter from IRPI's counsel which requested that Scottsdale reconsider its denial of coverage for the Liberty Letter in view of the Liberty Complaint.

37. In a May 2, 2023 letter sent to IRPI's counsel by Scottsdale's counsel, Scottsdale advised IRPI that the Scottsdale Policies do not provide coverage for and do not apply to the Liberty Lawsuit; that Scottsdale has no duty to defend and pay attorney's fees and costs incurred defending the Liberty Lawsuit; that Scottsdale has no duty to indemnify any settlement or judgment or to pay any settlement or judgment; and that Scottsdale will no longer defend the Liberty Letter which was rendered moot and supplanted by the Liberty Lawsuit and for which there is no coverage.

38. IRPI has not acknowledged its agreement with Scottsdale's denial of coverage for the Liberty Lawsuit.

## COUNT I
**Declaratory Judgment Against All Defendants**

39. Scottsdale repeats, realleges, and incorporates herein the allegations of paragraphs 1 through 38 of this Complaint as though these paragraphs are alleged and set forth in this paragraph 39 of this Count I.

40. The Liberty Complaint arises out of the **Wrongful Acts** identified in the August 4 Notice – IRPI's issuance of a settlement check made payable to the wrong payee and mailed to the wrong address pursuant to instructions given in fictitious emails that IRPI received.

41. Pursuant to Section V.C. of the Policies (*see*, citation at ¶23, *supra*) the Liberty Lawsuit is considered to be a **Claim** made when the August 4 Notice was given to Scottsdale, and therefore it is deemed to be a **Claim** first made during the October 1, 2021 to October 1, 2022 **Policy Period** of the 2021-2022 Policy.

42. Pursuant to the Insuring Agreement of the 2021-2022 Policy, Scottsdale has the right and duty to defend any **Claim** to which the insurance applies:

> **I.** **INSURING AGREEMENT**
>
>> **A.** **Insurance Agents and Brokers Professional Liability**
>>
>> The **Company** will pay on behalf of the **Insured** any **Damages** as a result of a **Claim** first made against the **Insured** during the **Policy Period** or DISCOVERY PERIOD, if applicable, for a **Wrongful Act** of the **Insured** or any other person for whom the **Insured** is legally liable , but only if:
>>
>>> **1.** such **Wrongful Act** is first committed on or after the RETROACTIVE DATE stated in **Item 5.** of the Declarations and before the end of the **Policy Period;** and
>>>
>>> **2.** prior to the inception date of the first policy in a series of uninterrupted policies issued to the **Named Insured** by the **Company** of which this Policy is a direct or indirect renewal or replacement, no **Insured** had a reasonable basis to believe that such **Wrongful Act** had been committed or that a **Claim** would be made against any **Insured** alleging such **Wrongful Act.**
>
>> **B.** **Defense Costs**

> The **Company** has the right and duty to defend any **Claim** to which this insurance applies other than a **Disciplinary Proceeding**, even if the allegations of the **Claim** are groundless, false or fraudulent.
> … .

(2021-2022 Policy, Ex. A).

43. Pursuant to Exclusion A.5. of the 2021-2022 Policy, "the Policy will not apply to any **Claim** based on, directly or indirectly arising out of or resulting from .. failure to collect or safeguard any money". (*See* citation at ¶24, *supra*).

44. The Liberty Complaint is based on, directly or indirectly arises out of, and results from the failure to collect or safeguard the settlement funds that Liberty provided to IRPI for the resolution of the IRPI.GL.18.295 Claim.

45. Accordingly, no coverage is available for the Lawsuit under the 2021-2022 Policy pursuant to Exclusion III.A.5.

46. Because there is no coverage and the 2021-2022 Policy does not apply to the Lawsuit, Scottsdale has no duty to defend the Lawsuit under the 2021-2022 Policy and has no duty under the 2021-2022 Policy to pay **Defense Costs** or any attorneys' fees and costs incurred by IRPI with respect to the Lawsuit.

47. Because there is no coverage and the 2021-2022 Policy does not apply to the Lawsuit, Scottsdale has no duty to indemnify the Lawsuit under the 2021-2022 Policy, and has no duty under the 2021-2022 Policy to pay any **Damages**, judgments, settlements, or any other payments with respect to the Lawsuit.

48. The terms, conditions, and exclusions of the 2022-2023 Policy are the same as the terms, conditions, and exclusions of the 2021-2022 Policy with the exception of the **Policy Period**. (*See*, ¶25, *supra*).

49. In the event it is determined that the Liberty Lawsuit does not relate back to IRPI's August 4 Notice, there is no coverage and the 2022-2023 Policy does not apply to the Liberty Lawsuit for the same reasons that there is no coverage under the 2021-2022 Policy.

50. Because there is no coverage and the 2022-2023 Policy does not apply to the Liberty Lawsuit, Scottsdale has no duty to defend the Liberty Lawsuit under the 2022-2023 Policy and has no duty under the 2022-2023 Policy to pay **Defense Costs** or any attorneys' fees and costs incurred by IRPI with respect to the Lawsuit.

51. Because there is no coverage and the 2022-2023 Policy does not apply to the Liberty Lawsuit, Scottsdale has no duty to indemnify the Liberty Lawsuit under the 2022-2023 Policy and has no duty under the 2022-2023 Policy to pay any **Damages**, judgments, settlements, or any other payments with respect to the Lawsuit.

52. Based on the foregoing, Scottsdale seeks a declaration that the Policies do not provide coverage for and do not apply to the Liberty Lawsuit; that Scottsdale has no duty to defend the Liberty Lawsuit and has no duty to pay **Defense Costs** or any attorneys' fees and costs incurred by IRPI with respect to the Lawsuit; and that Scottsdale has no duty to indemnify the Liberty Lawsuit and has no duty to pay any **Damages**, judgments, settlements, or any other payments with respect to the Lawsuit.

53. An actual controversy of justiciable nature exists between Scottsdale and the Defendants, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§2201 and 2202, this Court is invested with the power to declare the rights and obligations of the parties hereto and to grant such relief as it deems necessary and proper.

WHEREFORE, Plaintiff, SCOTTSDALE INDEMNITY COMPANY, respectfully requests that judgment be entered in its favor and against the Defendants, and prays that this Court:

1. Determine, decide, adjudicate and declare the rights and obligations of the parties hereto with respect to the Policies described herein;

2. Enter an Order finding and declaring that 2021-2022 Policy and the 2022-2023 Policy do not provide coverage for and do not apply to the Liberty Lawsuit;

3. Enter an Order finding and declaring that Scottsdale has no duty to defend the Liberty Lawsuit and has no duty to pay **Defense Costs** or any attorneys' fees and costs incurred by IRPI with respect to the Liberty Lawsuit;

4. Enter an Order finding and declaring that Scottsdale has no duty to indemnify the Liberty Lawsuit and has no duty to pay any **Damages**, judgments, settlements, or any other payments with respect to the Liberty Lawsuit;

5. Grant such other and further relief that this Honorable Court deems equitable and just, including the award of costs to Scottsdale.

Dated: May 16, 2023  Respectfully submitted:

**SCOTTSDALE INDEMNITY COMPANY**

By: /s/ Nancy K. Tordai
      One of its Attorneys

Nancy K. Tordai (ARDC # 618.2953)
PETERS & NYE LLP
14 Executive Court, Suite 2
South Barrington, IL 60010
Telephone: 847-423-3053
Facsimile: 847-381-1693
Email: nancytordai@petersnye.com